## M. M. BLEDSOE *et als. v.* H. W. McCORRY.

REDEMPTION. *Judgments and decrees. Revivor. Administrator.* Where a debtor, whose land has been sold to satisfy one judgment, and bought by the creditor, and dies, after a second judgment is obtained, but before the redemption of the land, it is not necessary for the second judgment creditor to revive his judgment against the heirs, in order to redeem.

Case cited: Elliott *v.* Patton, 4 Yer., 10, holding a different doctrine as to revivor of the judgment, overruled.

Code cited: Secs. 2130.

### ·FROM MADISON.

Appeal from the Law Court. H. E. ·JACKSON, Special Judge.

HAYNES & BOND for plaintiffs.

A. W. CAMPBELL and E. L. BULLOCK for defendant.

TURNEY, J., delivered the opinion of the court.

An action of ejectment was commenced by McCorry against plaintiffs in error for a lot of nineteen acres of land in Madison county. The material facts are: On the 28th of April, 1866, Wm. O. Hutchinson, administrator of Joseph Fogg, deceased, obtained before a justice of the peace, judgment against C. T. Knight *et als.*, for three hundred and seventy-three dollars and

thirty-two cents. Execution was issued and levied upon the land in suit as the property of Knight. Judgment of condemnation having passed, the land was sold on the 21st of March, 1868, and purchased by Hutchinson at the sum of his judgment. On the 11th of August, 1866, W. S. Calloway obtained judgment against Knight for $14.70, and on the 21st of March, 1870, Calloway transferred his judgment to H. W. McCorry. On that, McCorry paid to Hutchinson the amount of his bid, etc., credited his judgment in full, and paid the balance of the ten per cent. required by statute to the clerk of the circuit court, taking his receipt as well as the receipt of Hutchinson, which latter receipt recites all the facts ordinarily necessary in case of redemption. Upon the production of this paper, sheriff Perkins executed a deed to McCorry, reciting all necessary facts. The levy ana sale were made by L. Newton, deputy sheriff, appointed by • Perkins. Shortly after the sale and before the redemption by McCorry, Knight died; an administrator upon his estate was appointed; there was no revivor of the Calloway judgment assigned to McCorry; the written notice of sale, if any, served upon Knight is lost. It is insisted by plaintiffs in error, that the recitals in the deed of the sheriff to McCorry of the service of notice, are not sufficient evidence, nor in fact *prima facie* evidence of the service of notice on Knight the owner, who was in the possession of the land. We are relieved of a consideration of this question by the proof. The deposition of the deputy sheriff shows

him to have no, or very little, recollection of the circumstances of the sale, his memory had been destroyed by paralysis.    Gen. A. W. Campbell proves that he was attorney for Hutchinson and prepared the notice of sale in strict accordance with the statute, gave it to the deputy sheriff, with minute instructions as to its service; that the deputy sheriff left his office and in an hour thereafter or less, Knight came in very much exited and said to him, "I suppose you are going to sell me out."    This was the first time Campbell and Knight had ever spoken together upon the subject.    These facts are to us conclusive proof of the service of the notice.

It is next objected, the certificate of sale was not transferred to McCorry, nor was the sheriff authorized and directed to make him a deed.    This is answered by the receipt of Hutchinson reciting every fact necessary to show a complete redemption from him. Upon the production of that paper a court of chancery would have compelled the sheriff and Hutchinson to have done everything needed to perfect the title in McCorry.    What the law would have compelled them to do, they might have done voluntarily.    The court charged the jury, "the plaintiff was not legally entitled to redeem the land; that Hutchinson could lawfully have refused to allow the plaintiff to redeem the land, until said Calloway's judgment was regularly revived against the heirs-at-law of Knight, to whom the right of redemption descended upon the death of C. T. Knight.    But Hutchinson could waive the legal objection to the plaintiff's right to redeem," etc.; "that

the legal effect and operations of Hutchinson's acceptance of his bid and interest from plaintiff, etc., was not a technical redemption, but simply an assignment by Hutchinson of his right to and interest in the land." Under this charge there was verdict and judgment for the plaintiff. While we are of opinion the merits of the case have been attained and the judgment a proper one, we think the charge erroneous. His honor, the circuit judge, followed the rule laid down by Judge Greene in *Elliott* v. *Patton*, 4 Yer., 10, viz: "When lands of the ancestor have been sold and purchased, and the equity of redemption descends to the heir, a judgment credltor of the ancestor is not entitled to redeem from the purchaser, according to the provisions of the act of 1820, until the plea of fully administered is found for the personal representative and a judgment had against the heir upon a *scire facias.*" By the act of 1841–2, ch. 6, sec. 9, substantially the act of 1820, carried into the Code by section 2130, it is provided: "Real estate sold for debt and made redeemable, shall continue redeemable to the debtor and his creditors for two years after the sale, upon the terms aforesaid, no matter how often it may have been previously redeemed." There is no provision for the revivor of the judgment of the creditor in the event of the debtor's death. It is only the right of the ancestor that descends to the heir; the statute giving the right of redemption to the debtor, gives a similar right to creditors. The inducements or causes prompting the conference of these two rights are very different and distinct; the one to enable the debtor

to regain his land, the other to enable the creditor to secure his debt; to do either of which things, redemption must be from the purchaser. It is well settled in this State, that the purchaser is the legal owner of the property sold under execution, by virtue of the deed from the sheriff, subject to the equitable rights of the debtor to repurchase, upon the terms of the statute, and it is this equitable right to repurchase that descends to the heir and this alone, which in no way interferes with the statutory right of a creditor to redeem. As clearly intimated, these two rights of redemption exist independently of and in no manner affected by each other.

We are unable to see how the right of a creditor to redeem the legal title can be interfered with by the descent of the debtor's equitable right to repurchase, if the rule announced in *Elliott* v. *Patton* be adhered to. It amounts to a virtual repeal of the statute giving the right of redemption to the creditor in all cases where the debtor dies after the sale and before redemption. Under that rule, a suit to revive must be instituted against the personal representative. This necessarily consumes time. When that has been ended and the return of *nulla bona* made, then a suit against the heirs, so that by the time all these things have been done, the two years given within which to redeem, will ordinarily have expired, and with them the right of the creditor to redeem. In our opinion, the case of *Elliott* v. *Patton* was based upon a confusion of the redemption rights of creditors with that of the debtor, and a failure to recognize them to be,

as they certainly are, separate, distinct and independent rights in each to acquire the legal title of the last purchase or redeeming creditors, without in any manner obstructing the equitable rights of the other.

Affirm the judgment.